# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3851

_____

| | |
|---|---|
| United States of America, | * |
| | * |
|     Plaintiff-Appellee, | * |
| | * Appeal from the United States |
| | * District Court for the |
|     v. | * Eastern District of Missouri. |
| | * |
| Michael J. Sickinger, | * |
| | * |
| | * |
|     Defendant-Appellant. | * |

_____

Submitted:  March 9, 1999

Filed:  June 14, 1999

_____

Before McMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges and
    SACHS,[1] District Judge.

_____

SACHS, District Judge.


    Michael J. Sickinger was charged with and found guilty of
kidnapping in violation of 18 U.S.C. § 1201(a) and of interstate
domestic violence in violation of 18 U.S.C. § 2261(a).  The
district court[2] sentenced Sickinger to 78 months in prison on each

_____

[1]The Honorable Howard F. Sachs, United States District Judge
for the Western District of Missouri, sitting by designation.

[2]The Honorable E. Richard Webber, United States District Judge
for the Eastern District of Missouri.

count, to run concurrently. Sickinger appeals, claiming a violation of the Fifth Amendment double jeopardy clause and two errors in applying the United States Sentencing Guidelines ("U.S.S.G."). We reject several of these contentions, but because we find one sentencing error we vacate the judgment and remand for resentencing.

## I.

On January 24, 1998, Judith Walker, Sickinger's girlfriend at the time, and her friend, Tammy Wilson, were cleaning a business in Clayton, Missouri. Sickinger arrived at the business shortly before noon and confronted Wilson and Walker through a window at the business. Shortly thereafter Sickinger gained access to the building, seized Walker by the hair, punched her in the stomach and pushed her into a bathroom. Wilson screamed at Sickinger to stop and threatened to call 911. Sickinger turned and called out "Bitch, I'll kill you if you call 911." Sickinger then seized Wilson's hair, threw her to the ground and kicked her in the face twice, shattering bones in her eye socket and breaking her nose and sinuses.

Sickinger then started choking Walker and dragged her by the hair to his Corvette. Once in the Corvette, Sickinger hit Walker in the nose and told her to keep her head down. When she raised her head, Sickinger struck her in the face and back of her head. When she tried to get out of the car, he used his hand and the power locks to keep the door shut.

After crossing into Illinois Sickinger stopped for shopping at a convenience store and a fast food drive-through. Walker later stated that she did not attempt to run because she had nowhere to go and was afraid of being beaten by Sickinger. Sickinger warned Walker not to attempt to run. They rented a hotel room and Sickinger placed two chairs in front of the door. Sickinger did

not at that time threaten or physically restrain Walker. Walker did not attempt to escape because she "lost so much blood . . . [and] I'm not going to get hit no more."

The next morning, Sickinger drove Walker to a gasoline station where she entered alone and purchased a drink and sunglasses to hide her black eyes. She made no attempt to escape or to alert authorities. That afternoon, Sickinger and Walker were stopped by an Illinois police officer and Sickinger was arrested.

## II.

### A. Double Jeopardy.

Sickinger argues that conviction and sentencing on both interstate domestic violence and kidnapping constitutes double jeopardy in violation of the Fifth Amendment. Sickinger failed to raise this argument in the district court and thus it has not been preserved. United States v. Santana, 150 F.3d 860, 863-64 (8th Cir. 1998); United States v. Garrett, 961 F.2d 743, 748 (8th Cir. 1992). We will, however, review the contention for plain error. United States v. Uder, 98 F.3d 1039, 1045 (8th Cir. 1996); United States v. Merritt, 982 F.2d 305, 306-07 (8th Cir.1992). Under the Court's plain error review we must affirm unless (1) the district court erred; (2) the error was plain under current law, i.e., clear and obvious; and (3) the error was prejudicial. United States v. Jackson, 155 F.3d 942, 947-48 (8th Cir.), cert. denied, 119 S.Ct. 627 (1998).

Under this standard, we cannot find that plain error has been committed by the district court. The only cases examining the contention raised by Sickinger, that interstate domestic violence is simply a more specific type of kidnapping, have rejected the argument. See United States v. Bailey, 112 F.3d 758, 766-67 (4th Cir.) cert. denied, 118 S.Ct. 240 (1997); United States v. Frank, 8 F. Supp.2d 253, 282 n. 26 (S.D.N.Y. 1998). Applying Blockburger

v. United States, 284 U.S. 299 (1932), the courts in Bailey and Frank held that each statute -- kidnapping and domestic violence -- requires proof of a fact that the other statute does not require. For example, kidnapping requires proof of "holding," while the domestic violence statute does not, and the domestic violence statute requires proof of an "intimate partner," a fact not required for a kidnapping conviction. See Bailey, 112 F.3d at 766-67; Frank, 8 F. Supp.2d at 282 n. 26. In light of these cases, we cannot say that any district court error was "clear and obvious." Jackson, 155 F.3d at 947.[3] We are thus unable to conclude that the district court plainly erred and we reject Sickinger's double jeopardy challenge.[4]

## B. Sentencing Guidelines.

### 1.

Sickinger argues that the district court erred in failing to grant a one-level reduction for release within 24 hours under U.S.S.G. § 2A4.1(b)(4)(C) and the Commentary thereto.[5] Sickinger claims that Walker was constructively released prior to 24 hours because Walker was left alone at a convenience store on two occasions and could have escaped. In the circumstances here, we conclude that the district court did not err in failing to grant a

---

[3]Because of the standard of review we use here, we do not reach the ultimate question of whether we necessarily agree with Bailey and Frank.

[4]Sickinger argues in his reply brief that the error of trial counsel caused him not to raise the double jeopardy argument in the district court. Such an ineffective assistance claim could be pursued under 28 U.S.C. § 2255.

[5]Section 2A4.1(b)(4)(C) provides that "[i]f the victim was released before twenty-four hours had elapsed, decrease by one level." The Commentary states that "For the purposes of subsection (b)(4)(C), 'released' includes allowing the victim to escape or turning him over to law enforcement authorities without resis-tance."

one-level reduction.  United States v. Frieberger, 28 F.3d 916, 918 (8th Cir. 1994) (district court's application of the Guidelines reviewed de novo; factual findings reviewed for clear error).  The district court could reasonably have determined that in light of the extraordinarily severe nature of Sickinger's abusive behavior towards Walker and Wilson, Walker was not in a position - physically, mentally or emotionally - to flee.  Although Sickinger's control had slackened, he did not release or abandon his prisoner.

## 2.

Sickinger argues finally that the district court erred when it increased the sentencing offense level by four points for permanent or life-threatening injury to Wilson, the friend who was most severely injured.  We agree that the Sentencing Guidelines do not specifically cover this aspect of the criminal affair and remand for resentencing.

Sentencing Guideline § 2A4.1 specifies a base offense level of 24 for kidnapping, abduction and unlawful restraint.  Subsection (b)(2) states that the base offense level should be increased four levels if "the victim sustained permanent or life-threatening bodily injury," and two levels if "the victim sustained serious bodily injury."  It further specifies that a three level increase is appropriate if the degree of the victim's injury falls between serious and permanent or life-threatening.  The district court found Wilson's injuries permanent and increased the base offense level by four, resulting in an offense level of 28 and a sentencing range of 78 to 97 months.

As that term is used in § 2A4.1, "the victim" rather plainly refers solely to the victim of the kidnapping, and not to persons suffering collateral injury during the kidnapping who are not

themselves abducted. In addition to the plain language of subsection (b)(2), we find support for this conclusion in the other subsections of § 2A4.1. See, e.g., § 2A4.1(b)(4)(A) and (B) ("If the victim was not released before . . . days. . . ."); § 2A4.1(b)(5) ("If the victim was sexually exploited. . . ."); § 2A4.1(b)(6) ("If the victim is a minor. . . ."); § 2A4.1(c)(1) ("If the victim was killed. . . ."). Quite obviously the references are to persons who have been abducted. Moreover, courts addressing use of "the victim" in similar Guidelines provisions have held that "increases based on injury to 'the victim' are predicated upon the risk to a single intended victim, and do not account for injuries and risks of injury to bystanders. . . ." United States v. Malpeso, 115 F.3d 155, 169 (2d Cir. 1997) (collecting cases from the Third, Fifth, Sixth and Ninth Circuits), cert. denied, 118 S.Ct. 2366 (1998). While Wilson was certainly a victim of Sickinger's criminal activities, she was not the kidnapping victim.

The Government relies on the robbery Guidelines provision, U.S.S.G. § 2B3.1, in support of its argument that injuries to third parties may result in an increase in the offense level. This reliance is misplaced. Unlike § 2A4.1, § 2B3.1 refers to injuries sustained by "any victim." We have no trouble with those cases that have interpreted "any victim" in § 2B3.1 to encompass, for example, bystanders, customers, tellers and security guards injured during the course of a bank robbery even though the bank and not the individuals is robbed. See, e.g., United States v. Molina, 106 F.3d 1118 (2d Cir.), cert. denied, 520 U.S. 1247 (1997); United States v. Muhammad, 948 F.3d 1449 (6th Cir. 1991). But we join those courts that have found a meaningful distinction between the "any victim" language in § 2B3.1 and the "the victim" language found in other Guidelines provisions. See, e.g., Malpeso, 115 F.3d

at 169-70; <u>United States v. Graves</u>, 908 F.2d 528, 530-31 (9th Cir. 1990).

Notwithstanding our conclusion that § 2A4.1 does not specify an upward adjustment for injuries to the bystander, Wilson, it is our view the district court may, on resentencing, consider whether an upward departure is appropriate under authority found in U.S.S.G. § 5K2.0 based on Wilson's injuries.[6] <u>See, e.g.</u>, <u>Malpeso</u>, 115 F.3d at 170; <u>United States v. Moore</u>, 997 F.2d 30, 35-36 (5th Cir. 1993).

Presumably, if it departs upward, the district court will make a careful reevaluation of the physical injury that occurred and will attempt to harmonize any departure with other provisions of the Guidelines.

For the reasons stated, the judgment is vacated and the case remanded to the district court for resentencing consistent with this opinion.

---

[6]We have considered the desirability of limiting further proceedings to matters germane to the issue on which a reversal is based, in order to avoid unjustified reconsideration of wholly unrelated matters. <u>See</u> <u>United States v. Cornelius</u>, 968 F.2d 703 (8th Cir. 1992). Where one basis for an enhanced sentence is ruled legally impermissible, however, this occasionally allows use of another ground for enhancement. <u>See</u>, <u>e.g.</u>, <u>United States v. Jacobs</u>, 136 F.3d 1187 (8th Cir. 1998) (Guideline enhancement allowed after statutory firearm enhancement fails). In a case like this one we see no principled basis for blinding the sentencing judge to issues that are intimately related to those requiring a new sentence. Even though we have ruled that Wilson's injuries were not the injuries to a kidnapping victim that are dealt with in the kidnapping Guideline, we are satisfied that sound procedure under Guideline Sentencing would permit the resentencing judge to reconsider the injuries occurring during the course of the crime and to determine whether they should be taken into account in some manner in reimposing sentence.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.